UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BONNIE GILES | CIVIL ACTION NO. 05-0618 |
| versus | JUDGE STAGG |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HORNSBY |

# REPORT AND RECOMMENDATION

**Introduction**

Bonnie Giles ("Plaintiff") applied for disability benefits in 1996 alleging an onset date of February 7, 1992. Plaintiff's insured status expired December 31, 1998, so she must establish disability on or prior to that date.

Plaintiff was born in 1950 and has a high school education. Her past relevant work was as a systems development analyst. She was employed by Mobil Oil from 1977 until her alleged onset of disability in February 1992. She alleges disability based on multiple impairments including scoliosis, seizures, headaches, depression, diabetes, hyperthyroidism (Graves' disease) and anemia.

Plaintiff's claim has now been heard and decided by three administrative law judges. ALJ Gold denied the claim in 1998, but this court granted the Commissioner's unopposed motion to remand the case to the agency for further proceedings. Tr. 318. A second hearing was held before ALJ Bundy, who also denied the claim. Tr. 418. The Appeals Council remanded the case (Tr. 451-54) with instructions to seek additional evidence regarding the

claim of a mental impairment and to better address Plaintiff's credibility. A third hearing was held before ALJ Nancy Griswold, who denied the claim based on a finding that Plaintiff could return to her past relevant work despite her limitations. Tr. 296. Plaintiff filed written arguments with the Appeals Council, which issued a reasoned opinion that addressed Plaintiff's arguments and concluded that they were not persuasive and did not warrant any change in the ALJ's decision. Tr. 276-79.

Plaintiff filed this civil action seeking the limited judicial review that is available under 42 U.S.C. § 405(g). It is recommended, for the reasons that follow, that the decision to deny benefits be reversed and that this case be remanded for yet more agency proceedings. In summary, reversal and remand are required because the Commissioner's written decision does not adequately address squarely presented evidence of severe headaches and the side effects of medication, including headaches and drowsiness.

**Issues on Appeal**

Plaintiff argues that the Commissioner's decision is erroneous because (1) the residual functional capacity ("RFC") assessed by the ALJ is contradicted by the evidence, (2) the ALJ did not properly consider the combined effects of Plaintiff's multiple impairments, (3) the ALJ erroneously concluded that Plaintiff could perform her past relevant work, and (4) the ALJ erred in finding Plaintiff less than fully credible.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Medical Records**

Dr. Robin Rogers conducted a consultative examination in December 1993. Plaintiff reported a two year history of problems with anxiety and depression. She reported symptoms such as memory problems, depression, crying, headaches, loss of appetite and difficulty in sleeping. Plaintiff said she had been treated by a Dallas physician for the last one and a half years. Dr. Rogers reported that a review of those records showed that Plaintiff had been seen "on pretty much a weekly basis" during that time and had been followed by a counselor in the Dallas physician's office. Plaintiff had frequently been prescribed Prozac, Zanax, Zoloft and similar drugs, and she was hospitalized once in November or December of 1992 for depression and suicidal thoughts. Plaintiff left after three days, against medical advice. Tr. 333.

Plaintiff was tearful during Dr. Rogers' examination. She admitted feeling hopeless at times, but she denied being actively suicidal. Plaintiff was alert and oriented. Her intelligence level appeared to be average, and her ability to understand questions was unimpaired. She exhibited some difficulties with attention and concentration. Her social interaction was appropriate. Dr. Rogers diagnosed major depression (recurrent) and generalized anxiety disorder.

Dr. Rogers suggested psychotherapy and antidepressant medication. Plaintiff was at first agreeable to psychotherapy but decided to postpone it because of financial concerns. Dr. Rogers changed Plaintiff's medication, which generated some slight improvements. Dr. Rogers assessed a current GAF score of 50 and a high score of 60 within the past year. The scale indicates that an assessment of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupation or school functioning (e.g., no friends, unable to keep a job). The range of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with co-workers). Tr. 334.

Dr. Rogers completed a form that indicated Plaintiff had impairments in areas such as the ability to relate to other people and the ability to understand and carry out instructions and respond to ordinary work pressures, making her (then) totally disabled from any occupation. Dr. Rogers estimated that Plaintiff could return to work in October 1994, though

he tempered his estimate because the chronicity of Plaintiff's stress and his limited treatment of the patient made it difficult to predict when Plaintiff might be able to return to work. Tr. 335-37.

There is no evidence that Plaintiff received treatment or counseling for mental problems between the consultation by Dr. Rogers in October 1993 and a June 1996 evaluation by Dr. Juliana Fort, a psychiatrist. Plaintiff complained of severe depression, excruciating headaches and a thyroid condition. She said she was taking thyroid medicine and that her headaches had somewhat dissipated because of a special medication. Plaintiff said she had trouble remembering people and events. She said she cried constantly, and she did cry throughout the interview. Plaintiff said she stopped working in systems development about five years earlier because "I was sick all of the time." She had been receiving disability insurance benefits since that time.

Dr. Fort's report was apparently prepared by a staff member rather than Dr. Fort herself. The report recounts that during the middle of the interview Plaintiff began talking about having severe panic disorder or panic attacks in the past. She became more and more labile and said she felt like she might harm herself. The author of the report then "consulted with Dr. Fort and she advised that the patient go immediately to Charter for patient assessment." Plaintiff refused to consider hospitalization because she felt her prior stay had not helped. Plaintiff did make a "verbal contract" with the interviewer not to harm herself and to report to the hospital if she felt she was going to harm herself. The assessment was

that Plaintiff was very depressed, though she said near the end of the interview that she "possibly could commit suicide." She seemed logical in her presentation of events, but there was a significant memory loss (according to the patient). Plaintiff's concentration level was very poor, and her insight and judgment were clouded. Tr. 150-51.

Dr. Fort continued adjusting Plaintiff's medications between that June 1996 visit and November 1996 when Dr. Fort issued a letter addressed to the state agency. She wrote: "I feel at this time Ms. Bonnie Giles is mentally impaired to the point she is not functional at work. Please review the attached documentation supporting this opinion." Tr. 141. The attachments apparently consisted of the treatment records discussed above. There is no indication that Plaintiff was ever treated again by Dr. Fort.

Dr. Pushpita Pramanik, a psychiatrist, conducted a consultative examination in January 1997 (a few months after Plaintiff filed this application). Plaintiff reported that she had filed an application about two and a half years earlier (thus explaining the earlier medical consultations) but it was denied. Plaintiff said she had been seeing a local psychiatrist for the past year to obtain the medications Pamelor (an antidepressant) and Ambien (a sleep medication). Plaintiff reported a history of temporal lobe seizure and hyperthyroidism and back pain. Plaintiff was "fairly histrionic" during the interview and cried. She said she was depressed, had severe back pain and could not sleep. Plaintiff denied suicidal thoughts, and she was well oriented, alert and cooperative. Her recent, remote and immediate memories were intact. Plaintiff's concentration and judgment were good, but her insight was fairly

limited as to how her behavior was affecting her life. Plaintiff said her back pain and sleep problem were primarily keeping her from work, but multiple doctors had found no back problem other than one side being longer than the other (apparently related to scoliosis). Dr. Pramanik found that Plaintiff did have depression, but she had a fair to good prognosis with the treatment she was receiving. She concluded: "From depression standpoint, she may have some limitations but that is really not precluding her from employment 100% at this time. Her primary reason at this time is physical problems." Dr. Pramanik did suggest that anyone evaluating the disability claim review a report from Plaintiff's treating physician and a second medical opinion. Dr. Pramanik assessed a GAF rating of 70, which indicates only mild symptoms or some difficulty in social, occupational or school functioning, but generally functioning pretty well. Tr. 164-66.

Dr. Richard Friend recorded in January 1996 that Plaintiff was "well known" to him and that he had followed her for seizure disorder, thyroid problems and insomnia. Plaintiff's thyroid appeared essentially normal in size, and the related condition was stable. The seizure disorder was also noted to be stable. Tr. 240. Dr. Friend recorded in February 1996 that Plaintiff had missed her last several appointments with other physicians. Dr. Friend wrote, "I have discussed at length with Ms. Giles the fact that I do not think that she is limited as far as work goes and that I will have to notify her insurance company that I do not think she is disabled." Tr. 238-39.

Clinical neuropsychologist Ronald Goebel, Ph.D., evaluated Plaintiff in August 1996 at the request of Dr. Fort. He conducted testing and interviews over two days and found only

minimal evidence of organic brain disease. Dr. Goebel found no evidence of malingering, and the test results were considered valid. "At best she demonstrates a mild loss of cognitive efficiency, manifested primarily by slower response speed." He found much more impressive Plaintiff's "very serious emotional maladjustment" reflected in test data. He recommended "vigorous treatment" of depression and suggested psychiatric evaluation to determine if medication for bipolar disorder was indicated. Tr. 502-04.

Dr. D. E. Russell, an internal medicine specialist, examined Plaintiff in June 1997. Plaintiff cried a lot during the interview and expressed concern about her mental ability and memory problems. Dr. Russell wrote that Plaintiff was "obviously very depressed and is very worried about all of the many diagnoses that she has and the amount of medication that she has to take for these seizures and diabetes, et cetera." Plaintiff had an enlarged thyroid gland. She also had lumbar scoliosis, but Dr. Russell did not feel that it was her primary problem, though it could be a factor when combined with other problems. He concluded that Plaintiff "is definitely disabled in my opinion with the seizures that she has and the bipolar disease, with her depression and other personality traits." Tr. 199-201.

Dr. Don Burt, an orthopedic surgeon, evaluated Plaintiff in February 1997. He found that Plaintiff's scoliosis was in itself not disabling for the work that Plaintiff had been doing and was the lesser of her problems. He suggested that the combination of all of Plaintiff's diagnosis, particularly seizures, would render her unable to do her previous job. He did, however, predict a "good possibility" that Plaintiff could return to full time work activity within a year. Tr. 191.

Dr. Mairus McFarland began treating Plaintiff in October 1996. He wrote, in a report dated February 1997, that the hyperthyroidism appeared to be "in fair control" and that Plaintiff "did not have many symptoms of thyroid disease and did feel somewhat back to normal." Dr. McFarland said it was his opinion that Plaintiff had "improved remarkably since her first visit, even though she is still very sick." Plaintiff "reluctantly" agreed that she had improved. Plaintiff denied any seizure activity. She still had problems with depression and insomnia even though she appeared to be compliant with her medication. Dr. McFarland concluded: "This patient is a very complex patient, and I do believe that she would qualify for disability." Tr. 167-68. There is no indication that Plaintiff was later treated by a mental health specialist, but she did see Dr. McFarland several times, and he often prescribed anti-anxiety medication. Tr. 338-79.

Dr. McFarland's most recent report is from July 2003, long after Plaintiff's insured status expired in 1998. He wrote that he had not seen Plaintiff "for quite some time" and that Plaintiff "denies any major complaints." Plaintiff's diabetes was still "poorly controlled." Plaintiff was alert and well oriented, and her recent and remote memory was intact. Her mood and affect were within normal limits. Dr. McFarland's assessment included seizure disorder an hyperthyroidism, but he did not indicate any current symptoms or limitations caused by those conditions. Tr. 637.

Dr. McFarland completed an RFC assessment form in January 2004, with an indication that the limitations assessed therein were present since at least February 7, 1992 (the alleged onset date) although Dr. McFarland only began treating Plaintiff in 1996. He

opined that Plaintiff could occasionally lift up to ten pounds, could sit only one hour (total) during a work day and could stand/walk only one hour (total) during a work day, with the need to periodically alternate sitting and standing at least every thirty minutes. He found that Plaintiff should avoid concentrated exposure to humidity, noise, vibration, fumes and dust, and that she must avoid all exposure to every other environmental limitation included on the assessment form (e.g., cold, heat, wetness, heights and machinery). When asked to identify the objective findings to support the identified limitations, Dr. McFarland merely referred to Plaintiff's "condition with diabetes, HTN and hyperthyroidism." Tr. 630-32.

Dr. McFarland also completed a mental RFC assessment. He found that Plaintiff had good or fair abilities in most categories related to making an occupational adjustment, but he indicated poor/none ability to deal with work stresses and maintain attention/concentration. He indicated a fair, good or better ability to deal with other aspects of work, such as behaving in an emotionally stable manner, relating to social situations and following instructions. Tr. 633-35.

**The Testimony**

Plaintiff testified that she left her job in 1992 because of headaches that were sometimes so severe that she would vomit and have problems remembering things. A company physician recommended that she take medical leave, and she has not worked since. Plaintiff said she still has headaches "about every day." She said that on a good day she could take a couple of Excedrin and function OK but sluggishly. On a bad day, she has to

go to bed. She takes Tegretol for her seizure problems and has been told that it causes headaches. She takes Midrin, off and on, to treat migraines. Tr. 677-81.

Plaintiff said that she has seizures once or twice a week. They are not outwardly visible. Rather, they feel like a vibration in her head, which is followed by a bad headache. Tr. 682.

Plaintiff testified that she has low blood sugar almost every day, which results in headaches, shaking, nervousness and other symptoms. She said she was, however, able to adjust her blood sugar levels with insulin without calling for medical help. Tr. 683-85.

Plaintiff testified that she had a lot of lower back pains, which doctors said were caused by scoliosis. She also claimed numbness in her hands and fingers but said she had not talked to any physician about performing surgery on her back. Tr. 685-86.

Plaintiff reported that she was taking medication to treat her depression but could not say that it had "pulled [her] out." She reported crying spells and said she was antisocial, but she was not in counseling. Tr. 686-88. Plaintiff said she could take care of her own personal needs and do household chores on good days, about twice a week. She estimated that she could walk two city blocks without stopping and that she could sit for about an hour before her back would cause her to move. She sometimes naps during the day because her medications make her sleepy. If something has to be done away from home, she does not take the medicines because they make her so drowsy that she cannot function properly. Tr. 686-90.

**Summary of the ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in <u>Barnhart v. Thomas,</u> 124 S.Ct. 376, 379-80 (2003). She found at step one that Plaintiff was not working. At step two, she found that Plaintiff had seizure disorder, Graves' disease, depression, scoliosis and diabetes, impairments that are severe within the meaning of the regulations, but not severe enough to meet or medically equal a listing at step three that would result in an automatic finding of disability. Tr. 297-300.

The ALJ then reviewed most of the medical evidence discussed above, assessed it, and determined that Plaintiff had the RFC to perform the full range of light work[1], reduced by an inability to work at unprotected heights or around dangerous unguarded moving machinery. She also found that Plaintiff's RFC included a "slightly reduced ability" to maintain attention and concentration for extended periods and to interact in an appropriate manner with the general public when under stress. Tr. 301.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though a job may require lifting of only very little weight, it will still be classified as light rather than sedentary if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. A person must have the ability to do substantially all of these activities to be found capable of performing the full range of light work. 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Plaintiff's past relevant work as a systems development analyst, as generally performed in the national economy, is performed at the sedentary level and does not require working around moving machinery or at unprotected heights or working with the general public. Slight limitations in maintaining attention and concentration would not significantly impact the ability to perform the job, all according to the Dictionary of Occupational Titles. Accordingly, the ALJ found at step four that Plaintiff was capable of performing her past relevant work and, therefore, not disabled. Tr. 302.

**Analysis**

The court need not address all of the several arguments raised by Plaintiff within the course of her briefing of her four enumerated issues on appeal. The absence of a specific discussion and resolution of Plaintiff's testimony about her headaches, the side effects of her medication and other symptoms leaves the decision, as written, not supported by substantial evidence and requires a remand. Plaintiff testified squarely that the reason she left her job was because of headaches so severe that she would sometimes vomit and have problems remembering things. Plaintiff testified that she continued to have headaches almost every day and that they sometimes required her to go to bed. She also testified that she sometimes takes Midrin to treat migraine headaches. The medical records indicate that Plaintiff complained to Dr. Rogers about headaches, and she told Dr. Forcht that she had "excruciating headaches" that had somewhat dissipated with the assistance of medication. Headaches could logically be associated with a seizure condition, and they are an acknowledged potential side effect of Tegretol, which Plaintiff was taking.

The ALJ's decision mentioned Plaintiff's testimony about her daily headaches, cases of the shakes and numbness in her hands, fingers and toes (another acknowledged potential side effect of Tegretol). The ALJ mentioned that Plaintiff testified that the side effects of her medication made it difficult for her to sleep. (Plaintiff also testified that her medications make her so drowsy that she stops taking them if she has to do any task away from her home.)

The ALJ proceeded to discuss her assessment of Plaintiff's claims of back pain, problems associated with diabetes, Graves' disease and some other problems, but she did not specifically address Plaintiff's straightforward testimony about her headaches and side effects of medication. The ALJ's decision included a general statement that, based on the medical records discussed earlier in the opinion, the severity of Plaintiff's allegations during the relevant time were "not supported" (Tr. 301) and that Plaintiff's allegations about her limitations were "not totally credible for the reasons set forth in the body of the decision." Tr. 302.

An ALJ does not err if she does not specifically address a potential impairment that is not apparent from the record or otherwise brought sufficiently to her attention. See Gentry v. Barnhart, 141 Fed. Appx. 316 (5th Cir. 2005). On the other hand, an incomplete analysis or total lack of discussion of a significant line of evidence or claim of a limitation can prevent the court from finding that substantial evidence existed to support the agency decision. See Spalding v. Halter, 11 Fed. Appx. 596 (7th Cir. 2001). The court is unable to conduct a meaningful review where significant and probative evidence is rejected or

overlooked without comment or explanation.  Rasball v. Barnhart, 2003 WL 22939244 (D. Kan. 2003).  See also Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005)("While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.")

Perhaps the ALJ could have pointed to medical evidence or otherwise articulated reasons in accordance with Social Security Ruling 96-7p (Evaluation of Symptoms and Assessment of Credibility) that would undermine Plaintiff's credibility and withstand judicial review.  The current decision does not, however, contain an adequate discussion of the headaches and side effects claims to permit judicial review for substantial evidence as opposed to a *de novo* review, which Congress plainly did not intend the courts to conduct.  The proper action for the court in these circumstances is to find that the Commissioner's decision is not supported by substantial evidence and to remand the case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

The undersigned does not intend to imply that all other aspects of the ALJ's decision would withstand judicial review in the face of the arguments raised by Plaintiff on appeal.  The reasons given above require reversal and remand, so the court has not engaged in full review of the many other attacks raised by Plaintiff.  On remand, Plaintiff and the agency may further explore those issues and the issues addressed herein or any other relevant matters.  See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were

raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand).

Accordingly;

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** to the agency for further proceedings.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 28th day of June, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE